## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| VOYA INSTITUTIONAL TRUST COMPANY,<br><br>**Plaintiff**,<br><br>v.<br><br>UNIVERSITY OF PUERTO RICO, *et al.*,<br><br>**Defendants**. | **Civil No.** 16-2519 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court is the University of Puerto Rico ("UPR"), Governor Alejandro García-Padilla ("García"),[1] and the President of the University of Puerto Rico Celeste Freytes'[2] ("Freytes") motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). (Docket Nos. 14 and 15.) Additionally before the Court are motions to consolidate with <u>Universidad de Puerto Rico v. Voya Institutional Trust Company</u>, Civil No. 17-1040 (FAB).

---

[1] Former Governor García left office on January 2, 2017. He was succeeded by current Governor of Puerto Rico, Ricardo Antonio Rosselló-Nevares.

[2] Celeste Freytes is no longer the president of the UPR. Nivia Fernández-Hernández succeeded Freytes as interim president of the UPR on February 17, 2017. "Junta de Gobierno Elige Sucesora de Freytes," El Vocero (February 17, 2017), http://elvocero.com/junta-de-gobierno-elige-sucesora-de-freytes. Dra. Fernández resigned as interim president on May 24, 2017. "Puerto Rico University Chief Resigns Ahead of Arrest Order." NBC News (May 24, 2017), http://www.nbcnews.com/news/latino/puerto-rico-university-chief-resigns-head-arrest-order-n763976. Currently, the UPR has no president, interim or otherwise. The Court understands that the UPR has yet to name a president to succeed Dra. Fernández.

(Docket Nos. 27, 28 and 30.) For the reasons set forth below, the Court reserves judgment regarding the motions to dismiss and motions to consolidate. The Court orders plaintiff Voya Institutional Trust Company ("Voya") to show cause as to why this case should not be summarily dismissed for lack of subject matter jurisdiction.

## I. BACKGROUND

This case arises from a dispute regarding a voluntary deferred compensation plan ("plan") for eligible UPR personnel. (Docket No. 1 at p. 1.) The plan consists of $100 million held in trust for plan participants. (Docket No. 18 at p. 1.) Voya serves as trustee for the plan. (Docket No. 1 at p. 3.) Assets belonging the plan, identified as a "rabbi trust" or "top hat" deferred compensation plan,[3] are exempt from taxation until distribution to plan participants. (Docket No. 18 at p. 1.) Plan assets, however, remain subject to the claims of the UPR's general creditors in the event of insolvency. According to the plan agreement, if Voya

---

[3] A top hat plan is "unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). A rabbi trust is "an irrevocable trust that lets an employee set aside funds for the benefit of an employee in a top hat plan." Ezenia! Inc. v. Nguyen, 536 B.R. 485, 512 (D.N.H. 2015). To qualify as a rabbi trust, the trust property must "remain property of the employer and be subject to the claims of creditors in the event the employer becomes insolvent—in other words, the employee has no right to the trust *res* until disbursement in accordance with terms of the employer's deferred compensation plan." Id. at 511. The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, is inapplicable to top hat plans. Cogan v. Phoenix Life Ins. Co., 310 F.3d 238, 242 (1st Cir. 2002).

determines that the UPR is insolvent, Voya must "discontinue payments to Plan Participants or their beneficiaries and shall hold the assets of the Trust for the benefit of [the UPR's] general creditors."[4]  Id. at p. 5.

Moreover, the trust agreement provides for early withdrawals on an "unforeseeable emergency" basis, such as an unexpected illness or death, but not for "foreseeable expenditures normally budgetable."  Id. at p. 8.  Voya has denied 140 requests for withdrawals based on unforeseeable emergencies, rejecting attempts to access $33 million of plan assets.  Id. at p. 9.  On May 31, 2016, Voya received a removal notice from UPR, requesting that Voya transfer all plan property to the UPR's board of trustees.  Id.  Shortly thereafter, the UPR mailed a letter to plan participants informing them of the following: the UPR terminated Voya as trustee, the UPR designated its board of trustees as successor trustee, the UPR intended to dissolve the plan, and the

---

[4] The plan agreement declares that the UPR is insolvent if "(i) [the UPR] is unable to pay its debts as they become due, or (ii) [the UPR] is subject to a pending proceeding as a debtor under the United States Bankruptcy Code." (Docket No. 1 at p. 6.)  Voya cites the Commonwealth of Puerto Rico's Audited Financial Statements from June 30, 2016, which state that "[t]he UPR's ability to continue receiving similar operational support and financing from the Commonwealth and GDB is uncertain."  Id. at p. 7.  The UPR relies heavily on contributions from the Commonwealth to cover $1.7 billion in operating expenses.  Id.  Furthermore, Voya noted that the UPR is embroiled in bondholder litigation.  See U.S. Bank Trust Nat'l. Assn. v. Commonwealth of Puerto Rico, Civil No. 16-2510 (FAB).

board of trustees would distribute the plan property accordingly. Id. at pp. 9-10.

## II. DISCUSSION

Voya seeks a declaratory judgment pertaining to the transfer of plan assets to the UPR board of trustees. (Docket No. 1 at pp. 13-16.) In particular, Voya requests that the Court determine whether this transfer would violate the plan agreement, the Puerto Rico Emergency Moratorium and Rehabilitation Act ("Moratorium Act"), P.R. Act No. 21-2016, and the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 *et seq*.

On June 30, 2016, President Barack Obama signed PROMESA into law. PROMESA seeks to address the dire fiscal emergency in Puerto Rico, and sets forth "[a] comprehensive approach to [Puerto Rico's] fiscal, management and structural problems and [. . .] a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." PROMESA § 405(m)(4). Among PROMESA's provisions is an automatic stay of all debt-related litigation against the Commonwealth and covered instrumentalities, including the UPR, which was or could have been commenced before the statute's enactment. PROMESA § 405(b). This component of PROMESA is "essential to stabilize the region for the purposes of resolving" the Commonwealth's financial crisis. Id.

§ 405(m)(5).  With the automatic stay, Congress "allow[ed] the Government of Puerto Rico a limited period of time during which it can focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits."  Id. § 405(n)(2).

The automatic stay, however, is "limited in nature," PROMESA § 405(m)(5)(B), and remains in effect until the earlier of (1) February 15, 2017, with a possible extension of sixty or seventy-five days, or (2) the date on which the Oversight Board[5] files a petition on behalf of the Government of Puerto Rico or any of its instrumentalities to commence debt-adjustment proceedings pursuant to Title III of PROMESA.  Id. § 405(d).

The automatic stay expired on May 1, 2017.  Subsequently, the Oversight Board filed Title III petitions on behalf of the Commonwealth of Puerto Rico, the Puerto Rico Sales Tax Financing

---

[5] PROMESA establishes a seven-member Oversight Board for Puerto Rico.  Id. §§ 101(b)(1), (e)(1)(A).  "The purpose of the Oversight Board is to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets."  Id. § 101(a).  The Oversight Board operates as an entity within the Government of Puerto Rico, id. § 101(c), and is given broad authority over the Commonwealth and any of its instrumentalities that the Board designates as "covered" instrumentalities, id. § 101(d)(1).  For instance, the Oversight Board has the authority to develop, review, and approve territorial and instrumentality fiscal plans and budgets, id. §§ 201-202; to enforce budget and fiscal plan compliance, id. §§ 203-204; to seek judicial enforcement of its authority to carry out its responsibilities under PROMESA, id. § 104(k); and to intervene in any litigation filed against the Commonwealth or its instrumentalities, id. § 212.  The Oversight Board designated the UPR as a covered instrumentality on October 30, 2016.  "List of Initial Covered Entities under the Law," Financial Oversight and Management Board for Puerto Rico (Oct. 30, 2016), https://juntasupervision.pr.gov/index.php/en/documents/.

Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees' Retirement System ("ERS").[6]  Because the Commonwealth of Puerto Rico, COFINA, the HTA and ERS are seeking relief pursuant to Title III, the automatic stay is once more applicable to these entities.  Id. § 405(d)(1)(C).  The Oversight Board, however, has not filed a Title III petition on behalf the UPR.  Consequently, the UPR is no longer protected by the automatic stay set forth in section 405 of PROMESA.[7]

Voya argues that transfer of plan assets implicates the automatic stay of PROMESA.  For instance, the automatic stay bars litigation to "obtain possession of property of the Government of Puerto Rico or of property from the Government of Puerto Rico or to exercise control over property of the Government of Puerto Rico."  Id. at § 405(b)(3).  Additionally, section 405 prohibits claims for remedies "conditioned upon the financial condition of, or the commencement of a restructuring, insolvency, bankruptcy, or other proceeding" during the automatic stay.  Id. at § 405(j).

---

[6] The Oversight Board commissioned Prime Clerk LLC to maintain filings and other records pertaining to PROMESA litigation.  Dockets relating to litigation commenced pursuant to Title III are available at https://cases.primeclerk.com/puertorico.

[7] Voya seeks relief from the automatic stay pursuant to section 405(e). (Docket No. 1 at p. 13.)  The Court deems that this request is moot.  As previously stated, the automatic stay protecting the UPR from litigation is no longer in effect.  Consequently, there is no applicable stay upon which the Court may grant relief.

Voya notes that PROMESA imposes liability for the transfer of property under specific circumstances.  Id. at § 407.

Voya's basis for federal subject matter jurisdiction hinges on a provision of PROMESA that is no longer in effect.  The Court cannot declare whether the transfer of plan assets to the UPR's broad of trustees violates PROMESA because the initial automatic stay expired, and the UPR is not subject to PROMESA's Title III.  The remaining claims set forth by Voya are rooted in Commonwealth law.  Namely, Voya seeks declaratory relief pursuant to the Puerto Rico Emergency Moratorium and Rehabilitation Act ("Moratorium Act"), P.R. Act No. 21-2016, and the plan agreement.  Neither the Moratorium Act nor the plan agreement, a contract between Voya and the UPR, establishes federal jurisdiction.[8]  Because "[f]ederal courts are courts of limited jurisdiction," the Court must "begin by ensuring that [it has] jurisdiction to reach the questions presented."  Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016).  The Court is not persuaded that, at this juncture, there is federal subject matter jurisdiction to adjudicate the disputes at issue in this case.  Accordingly, Voya must demonstrate that the Court has jurisdiction to adjudicate this case.

---

[8] Voya does not allege diversity jurisdiction.

**III. Conclusion**

For the reasons set forth above, the Court reserves judgment regarding the motions to dismiss and motions concerning consolidation. The Court orders Voya to show cause as to why this case should not be summarily dismissed for lack of subject matter jurisdiction. (Docket Nos. 14, 15, 27, 28 & 30.)[9] The parties must submit supplemental briefs addressing the issues raised in this memorandum and order **no later than July 5, 2017**. No extensions will be allowed.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 21, 2017.

> s/ Francisco A. Besosa
> FRANCISCO A. BESOSA
> United States District Judge

---

[9] The Court emphasizes that "a case may only be removed from state court if a federal court would have had subject matter-jurisdiction over the case if brought in federal court initially." Garib-Bazain v. Hosp. Español Auxilio Mutuo, Inc., 773 F.Supp. 2d 248, 252 (D.P.R. 2011) (Besosa, J.) (citation omitted). Because the motions to consolidate implicate removal from the Superior Court of San Juan, the Court holds that it is inappropriate to address the motions regarding consolidation before federal subject matter jurisdiction is established.